AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| FILED |
| --- |
| **Jun 03, 2024** |
| CLERK, U.S. DISTRICT COURT |
| EASTERN DISTRICT OF CALIFORNIA |

United States of America                    )
                                                           )
v.                                                        )
                                                           )          Case No.   1:24-mj-00069-EPG
CRISTOPHER BACA-ARIAS                  )
                                                           )
                                                           )
                                                           )
_____  )

*Defendant(s)*

## CRIMINAL COMPLAINT BY RELIABLE ELECTRONIC OR TELEPHONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     May 7, 2024 to May 30, 2024     in the county of          Merced          in the

       Eastern       District of          California          , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 USC 846, 841(a)(1) | Conspiracy to Distribute Fentanyl |
| 21 USC 841(a)(1) | Distribution of Fentanyl |
| | Maximum Penalty for Each Count: |
| | 20 years' imprisonment, $1 million fine, 3 years to life supervised release, |
| | $100 penalty assessment |

This criminal complaint is based on these facts:

See attached affidavit of SA James Johnson

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James Johnson, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P.
4.1 by telephone

_____
*Judge's signature*

Date:     **Jun 1, 2024**

City and state:          Fresno, California          

Erica P. Grosjean, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, James E. Johnson, Special Agent, Homeland Security Investigations, Department of Homeland Security, being duly sworn, do depose and state:

## I.     AGENT'S BACKGROUND

1.      I am a Special Agent with the United States Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between U.S. Drug Enforcement Administration and Homeland Security Investigations.  Furthermore, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.      I have held my current position with HSI since June of 2018. I was previously employed as a Deportation Officer with Enforcement and Removal Operations (ERO) in Fresno, California. I have also previously been employed as a United States Border Patrol Agent, where I started my federal law enforcement career in San Diego, California in 2010. I obtained a Bachelor of Arts, with honors, in Political Science from the California State University, San Jose in San Jose, California.

3.      I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSISAT) course. During these courses, I was trained in various types of criminal investigations, to include investigations involving the illegal trafficking of narcotics, currency, firearms, and contraband.

4.      My training and experience in narcotics enforcement have included narcotics interdiction, the identification of different types of narcotics, and the investigation of persons

in possession of narcotics for purposes of sales and transportation. In addition, I speak regularly with narcotics investigators at the federal, state and local level regarding the manner in which sellers of narcotics store, transport and sell narcotics.

5.     I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.

6.     While employed as a HSI Special Agent, I have spoken to and received training from more seasoned Narcotic Investigators in the field of narcotic identification and investigations involving narcotic offenses. I have participated in narcotic-related surveillances of known narcotics dealers.

7.     I have received special training in the methods used by drug traffickers to illegally produce, transport, and distribute methamphetamine and other controlled substances. I am familiar with all the formal methods of investigations, including, but not limited to, electronic surveillance, visual surveillance, general questioning of witnesses, search warrants, confidential informants, and the use of undercover agents. I have participated in investigations involving organizations involved in the manufacture, distribution, and possession with intent to distribute controlled substances, including, but not limited to, Fentanyl.

8.     This Affidavit is made to support a complaint charging **Cristopher BACA-ARIAS** with possession with intent to distribute Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1).

9.     In support of this complaint, I have alleged only those facts necessary to support a probable cause determination and have not alleged herein each and every fact disclosed by the underlying investigation.

## II. SUMMARY OF PROBABLE CAUSE

10.     Cristopher **BACA-ARIAS**, a resident of Oakland, conspired via phone with Merced area narcotics dealer Isaiah SERENA to distribute fentanyl. On May 7, 2024 and May 23, 2024, SERENA arranged to acquire fentanyl from **BACA-ARIAS** and then sent an associate, David GONZALES, to pick up the fentanyl in Oakland and return with it to Merced

1    for subsequent sale. During a search of a location associated with **BACA-ARIAS** on May 30,

2    2024, agents located **BACA-ARIAS** and recovered more fentanyl as well as additional

3    narcotics and indicia of sales. In a law enforcement interview, **BACA-ARIAS** admitted to

4    distributing fentanyl to SERENA and GONZALES on both dates.

5                    **III. FACTS ESTABLISHING PROBABLE CAUSE**

6           11.    On March 25, 2024, a search warrant was written to authorize electronic

7    intercepts on telephone number (209) 308-0120 herein referenced as Target Telephone 10

8    (TT10). This telephone number is being utilized by Isaiah SERENA to conduct business

9    associated to a drug trafficking network identified as part of that investigation. Agents were

10   able to identify SERENA as the user of TT10 over the course of interception in multiple

11   ways, including identifying him by voice and observing him move in conformity with

12   conversations on TT10. He additionally provided the number for TT10 to Merced County

13   Probation as his phone number in March 2023.  The search warrant was submitted to the

14   California Superior Court County of Merced and signed by the Honorable Judge Jennifer

15   Trimble.

16          12.    The investigative team intercepted voice calls with SERENA utilizing TT10 to

17   telephone number (510) 467-4580 which was being used by unidentified male (UM) UM178,

18   later identified as Cristopher **BACA-ARIAS**[1]. During the course of these intercepted

19   communications the investigative team learned that SERENA was purchasing Fentanyl from

20   **BACA-ARIAS**.

21                  **May 7, 2024 Fentanyl Transaction**

22          13.    On May 6, 2024, the investigative team with the use of a Confidential

23   Informant (CI) CI#1 who was familiar with SERENA ordered a kilogram of Fentanyl Powder.

24   As a result, SERENA utilizing TT10 called **BACA-ARIAS** at telephone number (510) 467-

25   4580. During the telephone call, SERENA is speaking in Spanish to **BACA-ARIAS**.

26

27   _____

28   [1] As discussed more fully below, investigators identified UM178 as **BACA-ARIAS** based on
a traffic stop, voice identification, his behavior in conformity with the content of intercepted
calls, and his subsequent admissions in an investigative interview.

SERENA asked **BACA-ARIAS** if he could "grab that tomorrow" and at what time. SERENA then stated, "Tomorrow about 6-7 in the evening." **BACA-ARIAS** replied "That's fine." SERENA asked where to meet, and **BACA-ARIAS** stated in Oakland. SERENA asked for the address and **BACA-ARIAS** stated he was going to call his brother to get it. SERENA stated that they want "that and the same clean on two ounces more, so the good looking one and two ounces of the clean one", to which the UM178 agreed. The investigative team concluded that SERENA made this telephone call to ensure that a kilogram of good quality fentanyl powder would be available to purchase on the 7th of May 2024.

14. On May 7, 2024, at approximately 1401 hours, SERENA received an incoming call on TT10 from **BACA-ARIAS** who was utilizing telephone number 510-467-4580. **BACA-ARIAS** asked SERENA what time he [SERENA] was coming to pick up. **BACA-ARIAS** continued to state to SERENA to come at 7:30 p.m. SERENA asked **BACA-ARIAS** "if it was ready." UM178 stated that it was ready, but he was running errands in the city of Hayward. **BACA-ARIAS** told SERENA to meet him in Oakland at 4:00 p.m., **BACA-ARIAS** asked SERENA if he was getting the "whole one." SERENA did not comprehend what UM178 was saying. **BACA-ARIAS** clarified the "11,000." SERENA stated "1,000 grams." SERENA agreed and told **BACA-ARIAS** that his friend would meet UM178 in Oakland. SERENA and **BACA-ARIAS** discussed how much he [SERENA] was going to pick up, and the call ended abruptly. The investigative team conclude this call to mean that SERENA is still attempting to pick up a kilogram of Fentanyl Powder on May 7, 2024, and SERENA will send one of his friends to do the transaction.

15. At approximately 1419 hours, SERENA made an outgoing call using TT10 to **BACA-ARIAS** who is utilizing telephone number (510) 467-4580. In the call, SERENA and **BACA-ARIAS** continue communicating in the Spanish language. SERENA can be heard asking to unknown third party in the background if they were tired and needed a nap. SERENA then told **BACA-ARIAS** that they were going to depart from SERENA's residence and be "there by 6." **BACA-ARIAS** stated this was "perfect." SERENA continued to state "they" were going to grab "the (clean/clear), good one." **BACA-ARIAS** suggested that

someone come try it out. SERENA replied, "No, just tell me is it good or not." **BACA-ARIAS** stated it was the "same good one every time." SERENA asked if it was the same one, they grabbed last time and **BACA-ARIAS** said it would be. The investigative team concluded this call was to inform **BACA-ARIAS** about what time they were departing SERENA's residence as well as to continue to inquire about the quality of the Fentanyl Powder.

16.     At approximately 1430 hours, the investigative team established surveillance on SERENA's residence located at 2320 Vaca Way, Merced, California. The investigative team observed two vehicles parked in the driveway that are associated with SERENA. A black in color BMW 5 Series bearing California license plate 8VYN895 and a white 2010 Chevrolet Tahoe bearing California license plate 6TXC214. The Chevrolet Tahoe is registered to Juan Villanueva or Virginia Resendez of 429 Gail Ct, Merced, California.

17.     At approximately 1608 hours, SA Kurtz observed SERENA and David GONZALES (DOB: 05/07/1979) standing in the driveway. I know from the investigation that David GONZALES is a criminal associate of Isaiah SERENA who acts as a drug courier on his behalf; GONZALES has been intercepted discussing drug business with SERENA and observed distributing narcotics at SERENA's request.

18.     SA Kurtz observed GONZALES enter into the driver seat of the Tahoe bearing California license plate 6TXC214 and depart the residence. The investigative team continued to conduct surveillance upon the Tahoe as it made multiple stops within Merced County. The investigative continued surveillance until the Tahoe arrived in Oakland, California.

19.     At approximately 2003 hours, SERENA received an incoming call on TT10 from GONZALES who was utilizing telephone number 209-793-1702. During the telephone call GONZALES states, he is at Wah Fay Liquor Store which is located at 2101 8th Avenue, Oakland, California. SERENA then made an outgoing call from TT10 to **BACA-ARIAS** utilizing (510) 467-4580. During the call SERENA provides **BACA-ARIAS** the location of GONZALES and informs he is waiting.

20.     SA Williams observed a Gray MAZADA bearing California license plate CA 9MBU063 park near the Tahoe and watched GONZALES exit from the driver seat. SA

1  Williams continued to watch GONZALES who had nothing in his hands walk to the Mazda
2  and enter. SA Williams then observed GONZALES exit the Mazda carrying a white plastic
3  grocery bag and re-enter the driver seat of the Tahoe. The investigative team then followed
4  the Tahoe as it returned to SERENA's residence in Merced, California.

5      21.     At approximately 2330 hours, MAGNET conducted a controlled purchase of
6  the kilogram of Fentanyl Powder from SERENA. CI#1 arrived at SERENA's residence
7  located at 2320 Vaca Way, Merced and purchased the kilogram of Fentanyl Powder without
8  incident. Upon completion of the controlled purchase operation, MAGNET placed the
9  kilogram of Fentanyl Powder into evidence.

10     22.     On May 8, 2024, a search warrant was written to authorize electronic
11 intercepts on telephone number (510) 467-4580, referred to in the affidavit and hereinafter as
12 Target Telephone 22 (TT22). For the reasons stated in this affidavit, I know this telephone
13 number was being utilized by **BACA-ARIAS**[2] to conduct business associated to the sale of
14 Fentanyl. The search warrant was submitted to the California Superior Court County of
15 Merced and signed by the Honorable Judge Jennifer Trimble.

16                    **May 21, 2024 Fentanyl Transaction**

17     23.     On May 21, 2024, at approximately 1025 hours, the investigative team
18 intercepted communications between **BACA-ARIAS** , telephone number (510) 467-4580,
19 TT22, being utilized by **BACA-ARIAS** and TT10, (209) 308-0120, being used by Isaiah
20 SERENA. The intercepted text message sent by TT22 to TT10 said "Hey."

21     24.     At approximately 1026 hours, **BACA-ARIAS** texted SERENA stating, "I am
22 calling you but you are not answering". At approximately 1706 hours, SERENA attempted to
23 call TT22, but the call did not connect. At approximately 1715 hours, SERENA utilizing the
24 telephone of his girlfriend Leticia CAMARGO[3], phone number (209) 877-3588, and called

25

26 _____
27 [2] At the time of authorization, **BACA-ARIAS**'s identity was still unknown and he was
   referred to as UM178 in the court authorization for the search of TT22.

28 [3] I know CAMARGO to be SERENA's significant other based on intercepted calls over TT10
   discussing their relationship.

TT22. Listed below is a synopsis of the conversation between SERENA and **BACA-ARIAS**:

SERENA asked UM178 where his cousin is going to go, Oakland or San Francisco. UM178 states Oakland and where they saw him last time. SERENA asked UM178 for an address. UM178 stated that he would send it right now. UM178 asked SERENA what timeframe, right now or before 7. SERENA said ok. SERENA asked UM178 if he had the same one and UM178 replied the same one. SERENA said "two" and UM178 asked how much money is coming 8 ($800 USD) and SERENA stated yes.

25.     At approximately 1717 hours, **BACA-ARIAS** sent a text message with a google maps link to Leticia CAMARGO's telephone number (209) 877-3588. The link that was sent is listed below:

https://www.google.com/maps/search/?api=1&query=2304=9th=Ave==
Oakland==CA=94606==USA

26.     At approximately 1718 hours, the investigative team began to conduct surveillance at 2320 Vaca Way, Merced, California, which is the known residence of SERENA. The surveillance was being conducted in anticipation to see who SERENA would send to pick up the fentanyl from **BACA-ARIAS** at the Oakland, California address.

27.     At approximately 1728 hours, California Department of Justice (CA DOJ) Special Agent (SA) Hoover witnessed a white Ford Mustang bearing California license plate 7BKH389 park in front of SERENA's residence. Law enforcement databases were queried regarding California license plate 7BKH389 which revealed the registered owner of the vehicle was Derek WITT.

28.     At approximately 1731 hours, the investigative team noticed TT10 received an incoming text message. The text message was sent by UM100 who was utilizing phone number (209) 421-8808. SERENA replied to UM100's text message. Although the text messages registered as intercepts, the investigative team was unable to review any content within the text messages. Dish Mobile, the service provider for TT10 has not been able to provide any text messages in a timely or efficient manner to the investigative team. However, the investigative team was aware that UM100 had previously contacted SERENA to purchase

small amounts of narcotics. Law enforcement databases were searched regarding the telephone number being used by UM100. These databases revealed that the telephone number used to UM100 was registered to Derek WITT.

29.     At approximately 1732 hours, the driver of the Mustang exited the vehicle and entered SERENA's residence. The investigate team was able to compare the driver of the Mustang to a California Department of Motor Vehicles photograph of Derek WITT. SA Hoover was able positively identify the individual who entered SERENA's residence as WITT.

30.     At approximately 1752 hours, SA Hoover observed WITT and David GONZALES exit SERENA's residence and enter into the Mustang. The Mustang departed SERENA's residence with WITT driving and GONZALES in the front passenger seat. The investigate team followed the Mustang to an Arco gas station located at 810 S. Coffee Street in the city of Merced. The investigative team followed the Mustang as it traveled to Oakland, California.

31.     At approximately 1959 hours, the investigative team intercepted an incoming telephone call to TT10 from telephone number (209) 793-1702 being used by GONZALES. During the telephone call, GONZALES states to SERENA "8th street hey we are five minutes away." During the time this telephone call was made by GONZALES, the investigative team was following the Mustang on 8th Street in the city of Oakland.

32.     At approximately 2002 hours, the investigative team intercepted an outgoing telephone call from TT10 to TT22. The following is a summary of the call:

SERENA stated that they will be there right now. UM178 asked how many minutes. SERENA asked UM 178 for the address. UM178 said it's the 8th and 21st (intersection). SERENA asked for the numbers and said 2024? UM178 said "uh huh 8th and 24". UM178 states that he will send him the address right now.

33.     Upon the conclusion of telephone call with **BACA-ARIAS** (UM178, the user of TT22), SERENA immediately made an outgoing telephone call to GONZALES who was using (209) 793-1702. During the brief call GONZALES, informed SERENA to tell **BACA-**

**ARIAS** that he was at the same store. The call was then terminated.

34.     At approximately 2005 hours, Agents conducting surveillance witnessed WITT and GONZALES pull over near the intersection of 21st street and 8th Avenue, by Wah Fay Liquor. SA Dobbins was able to establish a point of observation on the Mustang after it parked. After a few moments, WITT and GONZALES exited the Mustang and were standing on the sidewalk near the front of the store. After a few minutes, WITT re-entered into the driver's seat of the Mustang while GONZALES remained on the sidewalk.

35.     At approximately 2017 hours, SA Dobbins witnessed a grey Mazda sedan bearing California license plate 9MBU063 pull next to GONZALES who was standing on the sidewalk on 21st street. GONZALES then entered into the passenger side of the Mazda. This is the same Mazda sedan observed during the earlier transaction on May 7, 2024. Once GONZALES entered the Mazda it began to slowly drive northbound on 21st street. After traveling approximately 100 yards, the Mazda stopped, GONZALES exited the car and the Mazda drove away.

### Identification of Cristopher BACA-Arias and Reinaldo ARIAS-VALLE

36.     While following the Mazda, SA Williams requested the assistance from East Bay Regional Park Police (EBRPD) to conduct a traffic enforcement stop on the Mazda. The Mazda was stopped by EBPRD Officer Epstein at the intersection of Euclid Avenue and Van Buren Avenue in the city of Oakland.

37.     During the traffic enforcement stop of the Mazda, SA Williams parked in the near vicinity of 325 Euclid Avenue. While there, SA Williams observed a Hispanic male adult (HMA) who was later identified as Reynaldo ARIAS-Valle wearing a black long-sleeved shirt and blue jeans standing in front of the apartment complex located at 325 Euclid Avenue. ARIAS-Valle was talking on the phone, and later walked on Euclid Avenue towards the intersection of Warwick Avenue. ARIAS-Valle continued walking and ultimately out of the view of SA Williams.

38.     In an attempt to identify the driver of the Mazda, SA Williams walked past the location where the traffic enforcement stop was taking place. While walking past the traffic

1   enforcement stop SA Williams viewed ARIAS-Valle speaking to EBPRD Officer Epstein. SA

2   Williams was unable to positively identify the driver of the Mazda. At the conclusion of the

3   traffic enforcement stop, the driver of the Mazda exited the driver seat and re-entered the

4   Mazda in the front passenger seat. ARIAS-Valle entered the driver seat and then drove to the

5   underground parking structure for the apartment building located at 325 Euclid Avenue.

6        39.    SA Williams later met with EBPRD Officer Epstein who stated that the driver,

7   who was the sole occupant, of the Mazda was identified as **Cristopher BACA-ARIAS** with

8   the date of birth of October 28, 2005. During the traffic enforcement stop; EBPRD Officer

9   Epstein was presented with pictures of **BACA-ARIAS**' Republic of Honduras Birth

10   Certificate, a United States Department of Health and Human Services Refugee Resettlement

11   (ORR) Verification of Release. **BACA-ARIAS** used these articles to prove his identification

12   to EBPRD Officer Epstein.

13   **WITT and GONZALES Return to Merced with Fentanyl**

14        40.    Other members of the investigative team continued to follow the Mustang that

15   was occupied by WITT and GONZALES. The investigative team surveilled them from

16   Oakland, California to Merced, California. At approximately 2230 hours, SA Sinclair

17   observed the Mustang arrive at SERENA'S residence. Upon arrival, GONZALES exited the

18   Mustang and entered the residence. WITT exited the Mustang, retrieved an unknown item

19   from the rear passenger compartment and then entered the residence.

20        41.    Based upon the intercepted communications, along with the observations from

21   the investigative team members who were conducting surveillance; WITT and GONZALES

22   acted on behalf of SERENA as his drug couriers. WITT and GONZALES traveled from

23   Merced, California to Oakland, California to acquire two (2) ounces of fentanyl for $800

24   USD. GONZALES acquired the two (2) ounces of fentanyl directly from **BACA-ARIAS** who

25   was identified as the driver of the Mazda.

26   **Cristopher BACA-Arias and Reinaldo ARIAS-VALLE's Residence Identified**

27        42.    On May 23, 2024, the investigative team conducted surveillance upon the

28   suspected residence of **BACA-ARIAS** and Reinaldo ARIAS-VALLE which is located at 325

Euclid Avenue in the city of Oakland.

43.     At approximately 1600 hours, Special Agent Supervisor (SAS) Pacheco was parked on Euclid Avenue and observed a Mazda bearing California license plate 9MBU063 registered to Reinaldo Josael ARIAS-Valle pull in front of the underground parking gate to the apartment complex at 325 Euclid Avenue and later entered. The Mazda bearing California license plate 9MBU063 was previously seen on May 21, 2024, by the investigative team during a two (ounce) fentanyl deal.

44.     Once the Mazda entered into the under-ground parking garage California Highway Patrol Officer Sanchez acting in an undercover capacity entered the north side gate to the apartment building and walked up the west staircase. Officer Sanchez proceeded to the third-floor staircase landing and then heard a male voice talking. The male who was talking walked into the second-floor hallway door.

45.     At approximately 1603 hours, Officer Sanchez opened the second-floor hallway door from the west staircase. Instantly, Officer Sanchez observed a HMA standing in front of Apartment 203. Officer Sanchez recognized the HMA as Reinaldo Josael ARIAS-Valle. Officer Sanchez provided ARIAS-Valle with a flyer to prevent detection as a law enforcement officer. Officer Sanchez then had a brief conversation with ARIAS-Valle and asked if he could hand the flyer to the neighbor across from his apartment. In broken English, ARIAS-Valle stated that he did not know the neighbor. ARIAS-Valle then used a key to open the door to Apartment 203 and walked inside.

46.     The investigative team is aware that **BACA-Arias** and ARIAS-Valle are related and reside together. During a previous traffic enforcement stop that was used as an investigative tool to identify the driver of the Mazda bearing California license plate 9MBU063. It was learned that **BACA-Arias** called ARIAS-Valle and asked him to bring him his phone that was located on the bed. **BACA-Arias** was in need of photo identification to provide to EBPRD Officer Epstein so that his Mazda would not be towed.

**Body Worn Camera of Officer Epstein Obtained and Analyzed**

47.     On May 23, 2024, SA Williams obtained a copy of the Body Worn Camera

(BWC) video taken by EBPRD Officer Epstein during the traffic enforcement stop of **BACA-Arias**. The video of the traffic enforcement stop was translated from Spanish to English by SA Moran who is a native Spanish Speaker. SA Moran broke down the video by the time that was displayed. Listed below is a synopsis:

Minute 00:38 – EBPRD Officer Epstein contacted **Cristopher Odair BACA-Arias**. The following contact information was provided by BACA-Arias; 1847 8th Ave, Oakland, California with the telephone number of (510) 478-8540.

Minute 01:05 – **BACA-Arias** is on speaker phone stating, "Estan muy oscuras las ventanas Viejo." (Translation: The windows are to dark old man.)

Minute 01:14 – **BACA-Arias** is observed manipulating a smartphone while inside the vehicle. In the video, I can hear an unidentified male voice state, "Dile que si, dile que si, dile que si" (Translation: Tell him that, tell him that, tell him that). **BACA-Arias** starts utilizing a translator application on his cellular to communicate with the EBPRD Officer Epstein.

Minute 01:47 – **BACA-Arias** states in English, "My house is right here" and proceeds to point with his hand out the window past the location where the officer was standing.

Minute 02:07 – The unidentified male on the phone with **BACA-Arias** advised him to let the officer know about his Passport stating, "Dile del pasaporte" (Translation: Tell him about the passport).

Minute 02:18 – The unidentified male on the phone advises **BACA-Arias** to tell the officer he was coming from the store by stating in Spanish, "Dile que andabas en la tienda, dile" (Translation: Tell him that you were at the store, tell him).

Minute 02:42 – The unidentified male on the phone stated, "A donde estas" (Translation: Where are you?).

Minute 02:49 – **BACA-Arias** replied to the unidentified male who was on the phone, "Aqui estoy en el stop carnal" (Translation: I am here at the stop sign brother). **BACA-Arias** advised EBPRD Officer Epstein, "Es que my house is right here" (Trasnlation: Well, my house is right there) and proceeds to point with his hand again past the officer

location. Shortly after at minute 02:55 **BACA-Arias** stated, "Aqui estoy en el stop de aqui abajo" (Translation: I am right here at the stop sign, just below).

Minute 03:22 – **BACA-Arias** advises EBPRD Officer Epstein by typing on his cellular and using a translator application that he is a minor. **BACA-Arias** provides his age via the cellular device, and EBPRD Officer Epstein advises **BACA-Arias** that he is not a minor.

Minute 03:48 – **BACA-Arias** advises EBPRD Officer Epstein he does not have any identification stating, "Es que no have ID" (Translation: It's because I don't have ID).

Minute 03:52 – **BACA-Arias** advised the unidentified male on speaker phone, "Nita, ya one second. Nita en el otro telefono, traime el otro telefono ocupo algo para indentificarme me dice. Pero yo no tengo nada (Translation: Nita, yes one second. Nita, on the other phone, bring me the other phone. I need something to identify myself, I am being told).

Minute 04:25 – **BACA-Arias** states he can call his mother in Honduras for a picture of identification.

Minute 04:38 - **BACA-Arias** proceeds to advise the unidentified male on the phone, "Mandar me la cosa, la fecha de nacimiento que me mandaste la otra vez" (Translation: Send me the thing, the date of birth that you previously sent me).

Minute 04:47 – **BACA-Arias** emphasis, "La fecha de nacimiento, aqullo, de nacimiento. Todo eso porque me paro la policia. Ahorita por favor, si" (Translation: The date of birth, that, with a birth date. All of that because I got pulled over by the cops. Now please, yes?).

Minute 05:24 – **BACA-Arias** hands over his cellular phone to EBPRD Officer Epstein with a picture of a birth certificate stating he is a minor.

Minute 05:41 – **BACA-Arias** hands EBPRD Officer Epstein a second cellular phone when the officer requested some type of identification with his picture.

Minute 05:56 – **BACA-Arias** speaks into his cellular phone while using a translation application stating, "Soy menor de edad, no tengo ID aqui." (Translation: I am a minor;

13

I do not have ID). Then, at minute 06:06 **BACA-Arias** repeats the same phrase into his cellular phone.

Minute 06:33 – EBPRD Officer Epstein hands the cellular phone to **BACA-Arias** and proceeds to explain that he needs to have some type of identification if he is going to be operating a vehicle. **BACA-Arias** is observed via the video manipulating both cellular phones as he is trying to communicate with the officer.

Minute 07:15 – **BACA-Arias** advised the unidentified male via speaker phone, "Es que ocupa algo que tenga mi foto diez. Per como un pasaporte o algo, per no tengo pasaporte, no tengo nada" (Translation. It's because he needs something that has my picture ten. Like a passport or something, but I don't have a passport, I have nothing).

Minute 07:21 – The unidentified male on speaker phone asked **BACA-Arias**, "En donde estan" (Translation: Where are you?).

Minute 07:24 – **BACA-Arias** advises the unidentified male on speaker phone, "Ahi estan en el otro telefono lo tengo." (Translation: It's in the other phone that I have). At minute 07:29 the unidentified male responds, "En cual telefono?" (Translation: In which phone?). Instantly, **BACA-Arias** responds, "En el telefono que esta tirado en la cama" (Translation: In the phone that is laying on the bed). The unidentified male responds, "Esperar" (Translation: Ok, wait).

Minute 08:11 – EBPRD Officer Epstein proceeds to ask for the driver's name, and **BACA-Arias** responds that his first name is "Cristofer." At minute 08:29, EBPRD Officer Epstein provides **BACA-Arias** a pen and paper so he can write his first name, last name, and date of birth. As **BACA-Arias** is writing, you can observe on the video that he was looking at his cellular with an image of a birth certificate.

Minute 09:43 – **BACA-Arias** provides the officer a piece of paper and states his name is **Cristofer Odair BACA-Arias**, with a date of birth of "28 October 2005." EBPRD Officer Epstein returns the paper and asked **BACA-Arias** for his address.

Minute 10:17 – **BACA-Arias** states, "La de mi casa o la de aqui de mi tio?" (Translation: The one from my house or my uncles house?). In the video, **BACA-Arias**

is observed manipulating his cellular phone as to be looking for information and states, "Perame que me esta, me esta, buscado la de la ocho donde vivia yo" (Translation: Wait, he is, he is, looking for the address on 8th Street where I use to live).

Minute 11:13 – **BACA-Arias** advised the unidentified male on speaker phone that he was pulled over for tint on his windows stating, "Es que ocupa algo porque estan muy obscuros los vidrios" (Translation: It's because he needs something since the windows are dark).

Minute 11:18 – **BACA-Arias** states, "Es un patrol carnal. Perame" (Translate: It's a patrol officer brother. Wait).

Minute 11:58 – While viewing the video you can observe **BACA-Arias** on video manipulating google maps or something similar to a google maps application to identify his previous address of 1847 8th Street, Apt #23, in the City of Oakland, California.

Minute 14:30 – EBPRD Officer Epstein proceeded to run a records check by name and date of birth as **BACA-Arias** continues to seek an identification with his name, date of birth, and photograph.

Minute 17:55 – **BACA-Arias** is contacted at his vehicle by EBPRD Officer Epstein. **BACA-Arias** explains that he has a photograph identification on the way, and proceeds to speak to an unidentified male via speaker phone stating, "Ya llegaste carnal?" (Translation: Are you here brother?).

Minute 18:28 – EBPRD Officer Epstein inquires if **BACA-Arias** owns the vehicle he is operating. **BACA-Arias** responds, "A number de el es esta carro carnal" (Translation: The car is under his name brother).

Minute 18:55 – An unidentified male arrives on foot at the traffic stop location, stating **BACA-Arias** is his family/brother. The unidentified male provides the officer his identification via a Honduras Passport that featured the following information: Reinaldo Joael ARIAS-Valle, DOB: 2/07/92, Passport No., E1277240.

Minute 18:57 – Upon arrival, ARIAS-Valle hands **BACA-Arias** a third cellular phone.

Minute 19:11 – ARIAS-Valle advised EBPRD Officer Epstein that he is the registered

owner of the vehicle **Baca Arias** was driving.

Minute 19:39 – **BACA-Arias** advised ARIAS-Valle in Spanish, "Dile que vives con migo carnal" (Translation: Tell him you live with me brother).

Minute 14:44 – The officer advised ARIAS-Valle that **BACA-Arias** needs a picture identification, passport, or some type of identification. ARIAS-Valle tells **BACA-Arias** in Spanish, "Tenes, donde tenes los papeles?" (Translation: Do you have, where do you have the documents). **BACA-Arias** states something about a photograph, to which ARIAS-Valle replies, "No es la foto ahi?" (Translation: It's not that picture?).

Minute 20:07 – ARIAS-Valle retrieves his cellular phone from his rear right pant pocket and attempts to look for the information **BACA-Arias** is requesting since he cannot locate a picture identification on any of his three cellular phones. ARIAS-Valle stated, "No tenes papeles voz?" (Translation: You don't have any documents?).

Minute 20:12 – ARIAS-Valle instructs **BACA-Arias** to provide the officer a name by stating, "Dale el nombre!" (Translation: Give him the name!). **BACA-Arias** advises ARIAS-Valle, "Ya le di el nombre. Ya le di todo" (Translation: I already gave him the name. I gave him everything).

Minute 20:23 – As ARIAS-Valle is speaking to EBPRD Officer Epstein, **BACA-Arias** is speaking to a third unidentified person via speaker phone on one of his three cellular phones. **BACA-Arias** advises the unidentified person via cellular, "Manda pa ca la foto mia porque me paro la policia" (Translation: Send me my foto because I got pulled over). Minute 20:35 – **BACA-Arias** states, "Horita me la va a mandar, dale" (Translation: He is going to send it over now).

Minute 20:40 – **BACA-Arias** explains to ARIAS-Valle that he was pulled over for having tint on his windows. EBPRD Officer Epstein proceeds to explain he just needs some sort of identification in lieu of towing the vehicle.

Minute 21:02 – **BACA-Arias** tells ARIAS-Valle, "Abelito me va mandar la foto" (Translation: Able is going to send me the picture). ARIAS-Valle explains to EBPRD Officer Epstein that a picture of **BACA-Arias** is being sent to his cellular phones as

means of identification.

Minute 22:34 – EBPRD Officer Epstein asked ARIAS-Valle if **BACA-Arias** resided with him nearby. ARIAS-Valle stated **BACA-Arias** did, but ARIAS-Valle was unable to provide the address. As ARIAS-Valle is speaking to EBPRD Officer Epstein, **BACA-Arias** tells ARIAS-Valle, "Le dije que era la de la ocho" (Translation: Tell him it was the address on 8th Street).

Minute 22:36 – The officer advised ARIAS-Valle that he was going to release **BACA-Arias** with a warning and requested a telephone number for ARIAS-Valle. ARIAS-Valle stated his telephone number is (650) 898-5442. EBPRD Officer Epstein asked ARIAS-Valle for a good telephone number for **BACA-Arias**. ARIAS-Valle advises **BACA-Arias**, "Dame el numero de telefono" (Translation: Give me the telephone number). At minute 24:29 of the video, **Baca Arias** displays one of his three cellular phones to the officer and provides number (510) 478-8540.

Minute 24:57 – EBPRD Officer Epstein releases ARIAS-Valle and **BACA-Arias** on scene with a warning. This concluded the review of the video footage.

**California Highway Patrol Officer Pelayo Identifies UM178 as BACA-ARIAS**

48.     California Highway Patrol Officer Pelayo is familiar with the voice of UM178 and the user of TT22 through listening to prior electronic intercepts and conversations that have taken place with SERENA utilizing TT10 and UM178 who utilizes TT22. Officer Pelayo watched the body camera footage of EBPRD Officer Epstein. Officer Pelayo was able to compare the voice of **BACA-Arias** that was speaking to EBPRD Officer Epstein to that of UM178 from prior recorded voice intercepts. Officer Pelayo was able to identify UM178 who utilizes TT22 to conduct narcotics transactions with SERENA as **BACA-ARIAS**.  Officer Pelayo notes that the sound of the voice of **BACA-Arias** has a unique accent and is easily detectable to someone who has listened to the record voice intercepts and EBPRD Officer Epstein's body camera video.

**May 25, 2024, Surveillance of 325 Euclid Avenue**

49.     On May 25, 2024, the investigative team continued surveillance upon the

Mazda. At approximately 1308 hours, SA Hoover observed a Mazda bearing California license plate 9MBU063 exit the underground parking garage located at 325 Euclid Avenue.

50.     At approximately 1345 hours Officer Sanchez observed the Mazda as it was parked in front of 1522 23rd Avenue in the city of Oakland. The hazard lights were activated on the Mazda.

51.     At approximately 1347 hours Officer Sanchez observed a male wearing a black t-shirt walking towards the Mazda with two (2) other males. Officer Sanchez was able to identify the male in the black t-shirt as **BACA-Arias**. Officer Sanchez observed as **BACA-Arias** entered the Mazda with an unidentified male. The investigative team was ultimately able to identify the male with **BACA-Arias** as Luis MARQUEZ (DOB: 01/22/1996). Once **BACA-Arias** and MARQUEZ were in the vehicle the Mazda departed.

52.     The investigative team continued to surveil the Mazda and noticed it made brief stops at multiple residences in the area. The investigative team came to realize that this type of pattern is consistent with narcotic sales activity.

53.     At approximately 1359 hours, SA Kurtz observed the Mazda parked in front of the apartment complex at 325 Euclid Avenue. SA Kurtz observed **BACA-Arias** exit the Mazda and walk toward the apartment's parking garage. SA Kurtz observed a blue Mustang Park in front of the apartment complex and watched **BACA-Arias** motion toward the Mustang to come to him. SA Kurtz observed **BACA-Arias** holding a small remote that he pointed toward the parking gate and as a result it opened. The Mustang then entered the parking garage followed by **BACA-Arias**. SA Kurtz noted the Mustang was bearing California license plate 8MJX595 and is registered to a Henry Ariel ARIAS-Valle, Apt 1, 38021 20th St E, Palmdale. SA Kurtz was able to positively identify Henry Ariel ARIAS-Valle as the driver of the Mustang from viewing California Department of Motor Vehicles photographs.

54.     At approximately 1405 hours, the investigative team observed **BACA-Arias** and Henry ARIAS-Valle exit the apartment complex from the main entrance. The investigative team observed **BACA-Arias** and Henry ARIAS-Valle enter into the Mazda and

depart.

55.    The investigative team had previously viewed Reinaldo ARIAS-Valle enter 325 Euclid Avenue, Apartment 203. The investigative team witnessed **BACA-Arias** using a remote to open the gate to the parking garage and later exit out of the front of the apartment complex. The investigative team was previously aware that **BACA-Arias** called Reinaldo ARIAS-Valle when he was stopped by EBPRD Officer Epstein. While **BACA-Arias** was stopped he told Reinaldo ARIAS-Valle to bring him the phone that was on the bed so he could provide photo identification to EBPRD Officer Epstein. So therefore, the investigative team believes that **BACA-Arias** and Reinaldo ARIAS-Valle reside at 325 Euclid Avenue, Apartment 203, Oakland, California.

56.    **<u>Search Warrant of 325 Euclid Avenue, Apartment 203</u>**

57.    On March 28, 2024, a search warrant was submitted to the California Superior Court County of Merced for 325 Euclid Avenue, Apartment 203, Oakland, California. The search warrant was signed by the Honorable Judge Jennifer Trimble.

58.    On March 30, 2024, at approximately 0600 hours the search warrant was executed upon 325 Euclid Avenue, Apartment 203, Oakland, California. During the search warrant execution, the following individuals were encountered: **Cristopher BACA-Arias**, Reinaldo ARIAS-Valle, and Luis MARQUEZ.

59.    Upon the search of the residence, the investigative team seized the following items: Central Machinery 12-ton shop press that was altered into a kilogram press. SAS Vignau swabbed the press and did a Trace presumptive test utilizing the MX908. The swab presumptively tested positive for fentanyl. The following suspected narcotics were located and seized during the search. Please note that some suspected narcotics were located in the bathroom toilet:

    A clear plastic bag containing a crystalline substance that weighed approximately 52.7 grams. The TruNarc test resulted in a presumptive positive for methamphetamine.

    A clear plastic bag containing a crystalline substance that weighed approximately 48.2 grams. The TruNarc test resulted in a presumptive positive for methamphetamine.

A clear plastic bag containing a crystalline substance that weighed approximately 36.1 grams. The TruNarc test resulted in a presumptive positive for methamphetamine.

A clear plastic bag containing a white rock substance that weighed approximately 39 grams. The TruNarc test results were inconclusive.

A clear plastic bag containing a brown tar type substance that weighed approximately 58 grams. The TruNarc cannot be utilized on dark substances.

A clear plastic bag containing a multi-colored powdered substance that weighed approximately 55.5 grams. The TruNarc was not utilized due to suspected narcotics being wet.

A clear plastic bag containing a brown powdered substance that weighed approximately 212.3 grams. SAS Vignau conducted a Presumptive Positive test with the MX908 which tested positive for Fentanyl.

A clear plastic bag containing an unknown white rock substance that weighed approximately 45.6 grams. SAS Vignau conducted a Presumptive Positive test with the MX908 which tested positive for Fentanyl.

60.     Additional items that were seized indictive of narcotics trafficking were multiple digital scales, white containers labeled "Super Mannitol", a white container labeled "Acetone", a white container labeled "Lactose", multiple bottles containing liquid dye, five (5) boxes of clear plastic bags, kilogram press molds, and approximately eighteen (18) cellular phones.

61.     The investigative team learned that MARQUEZ had an active felony arrest warrant from Alameda County. EBPRD Officer Bermudez arrested MARQUEZ on the outstanding warrant. **BACA-Arias** and ARIAS-Valle were transported to the Merced County Office of Emergency Services located at 3500 Apron Ave, in Atwater, California to be interviewed.

**Interview of Cristopher BACA-Arias**

62.     On May 30, 2024, SA Moran and California Highway Patrol Officer Quiralte conducted an interview of **BACA-Arias.** SA Moran and Officer Quiralte were informed by

**BACA-Arias** that his knowledge and lack of understanding of the English language were limited. Therefore, the interview was conducted in **BACA-Arias** primary language Spanish**.** Due to **BACA-Arias** lack of understanding of the English language the interview was conducted in the Spanish language. SA Moran and Officer Quiralte are both fluent in the Spanish language. **BACA-Arias** was read his Miranda Rights in Spanish by SA Moran, to which **BACA-Arias** stated he understood his rights. Listed below is a summary of the interview of **BACA-Arias**:

> **BACA-Arias** stated he resides in the City of Oakland California, however, could not provide an address. **BACA-Arias** explained he resides with his aunt whom he did not identify, but typically visits his uncle Reinaldo ARIAS-Valle. **BACA-Arias** stated he will occasionally sleep his uncles (ARIAS-Valle) residence, which was the case on this date. **BACA-Arias** stated that his uncle (ARIAS-Valle) resides with another male adult he only knows by the moniker of "Coco." **BACA-Arias** stated he is unemployed but seeks work daily at two different locations in Oakland as manual labor for hire. **BACA-Arias** is paid cash for these jobs. **BACA-Arias** explained he typically works four (4) to seven (7) days per week and gets paid anywhere from $400 USD to $1,100 USD per week. **BACA-Arias** stated that he was arrested eight (8) months ago for possession of narcotics for sales. **BACA-Arias** stated he was arrested for possessing two (2) grams of cocaine. **BACA-Arias** stated he was in custody on prior narcotic sales but released on an alternative rehabilitative program called "Homies." **BACA-Arias** stated he was residing in another State prior to residing in California. **BACA-Arias** stated when he arrived in California he started selling Cocaine. **BACA-Arias** stated that he initially started selling Fentanyl in 2021 while residing in Los Angeles. **BACA-Arias** explained that at that time, he was residing with another one of his uncles named Ariel ARIAS-Valle. BACA-Arias explained that his uncle A. Arias-Valle had just returned to Los Angeles after visiting him in Oakland. **BACA-Arias** initially stated the last time he sold any narcotics was eight (8) months ago, but later recanted by stating he last sold Fentanyl approximately twenty (20) days prior. **BACA-Arias** stated a friend referred

him to the individual who purchased the Fentanyl. **BACA-Arias** stated that on this occasion he earned $1,000 USD. **BACA-Arias** stated he was called by a friend and instructed to deliver a Fentanyl package near his residence. **BACA-Arias** was unwilling to identify his friend that provided him the narcotics. **BACA-Arias** stated that the package containing the narcotics was a good size package, so therefore, the return in cash was a significant amount as well. **BACA-Arias** explained that he took the narcotics in a white plastic bag, waited in his vehicle to be contacted by the buyer, exchanged the narcotics for money that was provided to him in an envelope by an unidentified male adult, and thereafter, the buyer departed the area. **BACA-Arias** stated the transaction took less than ten (10) minutes all together. **BACA-Arias** explained that the package was approximately one (1) pound in weight, and he knew it was Fentanyl based on the distinctive smell Fentanyl emits. **BACA-Arias** explained that he sold narcotics on the streets for approximately two (2) months upon his arrival to California and knew the smell of Fentanyl. **BACA-Arias** stated Fentanyl is a dangerous drug and he has seen many of his friends consume the drug while in his presence, so therefore he knows the smell. **BACA-Arias** stated the exchange of narcotics for money took place inside of his vehicle, a grey Toyota Corolla. **BACA-Arias** stated that as the buyer drove away, he noted the buyer was driving a white Chevrolet Tahoe. **BACA-Arias** described the buyer as a hairy, male adult with facial hair, approximately 40 – 45 years of age. Additionally, **BACA-Arias** stated that less than a week ago, he was pulled over by law enforcement driving his uncle's vehicle. **BACA-Arias** stated that on this occasion, he was pulled over after delivering a smaller amount of Fentanyl to the same unidentified male adult whom he previously delivered approximately one (1) pound of Fentanyl too. **BACA-Arias** stated that the transaction was similar to the first encounter, he met with the buyer inside his vehicle, exchanged narcotics for money. The transaction was conducted at the same location as before, near his residence. **BACA-Arias** stated that on this occasion, he was only paid $100 USD for the delivery of Fentanyl. **BACA-Arias** stated that the person who provides

1  him the Fentanyl to sell is the same person that brought him into the United States

2  illegally. **BACA-Arias** was unwilling to identify the individual who supplies the

3  Fentanyl, and affirmed it was not a relative of his. **BACA-Arias** simply stated that the

4  individual who supplies Fentanyl resides in San Francisco, California. At the

5  conclusion of the interview, **BACA-Arias** stated that his personal cellular number ends

6  in 9284 or 9780. **BACA-Arias** described his cellular phone as a blue Samsung Galaxy

7  with a cracked screen. **BACA-Arias** stated that when he was arrested on this date, he

8  advised the arresting officer that his cellular was located on his bed within apartment

9  203 at 325 Euclid Avenue, Oakland, California.

10  63.    Based upon the interview, the investigative team has derived probable cause

11  that **BACA-Arias** knowingly sold Fentanyl Powder to David GONZALES who was working

12  as a drug courier for Isaiah SERENA on two prior occasions.

13

14                              **IV.     CONCLUSION**

15  64.    Based on the foregoing, there is probable cause to believe that **Cristopher**

16  **BACA-Arias** did knowingly conspired to distribute and distribute Fentanyl, in violation of 21

17  U.S.C. § 841(a)(1) and 846.

18

19  I declare under penalty of perjury that the foregoing is true and correct to the best of

20  my knowledge.

21  _____

22  James E. Johnson, Special Agent

23  Homeland Security Investigations

24

25

26  Attested to by the applicant in accordance with

27  the requirements of Fed.R.Crim.P. 41.1, by internet or

28  telephone on ____**Jun 1, 2024**_____

1

2

3
_____
Hon. Erica P. Grosjean

4
U.S. Magistrate Judge

5

6
Approved as to form and substance:

7
 /s/ Robert Veneman-Hughes

8
Robert Veneman-Hughes
Assistant U.S. Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28